## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROMELL HANDLEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 12 C 5032** |
| v. | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Petitioner Romell Handley's *pro se* motions to reconsider this Court's order denying his petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and to grant an evidentiary hearing. For the reasons set forth below, Petitioner's motion to reconsider is granted and his motion for an evidentiary hearing remains under advisement.

## RELEVANT FACTS

The relevant facts relating to Petitioner's criminal conviction are set forth in a published opinion by the Seventh Circuit Court of Appeals, *see United States v. Morales*, 655 F.3d 608 (7th Cir. 2011), and are repeated here only as they pertain to Petitioner's current section 2255 petition.

Petitioner was one of sixteen individuals indicted by a federal grand jury on various racketeering-related charges in 2006. Petitioner and his codefendants were members of the Aurora Deuces, the Aurora, Illinois chapter of the Insane Deuce Nation street gang. Petitioner was the third-ranking member (the "Enforcer") of the Deuces' most junior members (the "Shorties"), and was thus responsible for assigning missions to Shorties, ensuring compliance

with the Deuces' rules, and punishing Shorties who broke the rules. Petitioner was indicted on a

charge of racketeering conspiracy (Count One) in violation of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* In an effort not to overwhelm the jury, and

due to the logistical challenge of trying so many defendants in a single courtroom, this Court

severed the case into two trials. Petitioner was grouped with the "less major players" and tried

before Judge Leinenweber.

Petitioner was represented by Beau Brindley before and at trial, at sentencing, and on

appeal. Petitioner contends that the government offered him a plea agreement prior to the trial.

(R. 8, Mot. Reconsider at 3.) The draft plea agreement, which he attached to his petition would

have required Petitioner to plead guilty to one count of possessing a firearm pursuant to 18

U.S.C. § 924(c) and one count of conspiring to commit murder in aid of racketeering pursuant to

18 U.S.C. § 1959(a)(5). (R. 4, Ex. A, Plea Offer ¶ 2.) Petitioner contends that under the plea

offer, he would have faced a maximum penalty of 15 years and a mandatory minimum of five

years. (R. 8, Mot. Reconsider at 5-7.)

Petitioner's characterization of the sentence he would receive under the plea offer is

belied by the draft plea agreement he attached to his Petition. (R. 4, Ex. A, Plea Offer.) Under

the heading "Maximum Statutory Penalties," the draft plea agreement states: "Count One carries

a maximum sentence of life imprisonment and a mandatory minimum sentence of 5 years'

imprisonment, which must be served consecutively to any other term of imprisonment imposed

by the Court." (*Id.* ¶ 7(a).) It later reiterates: "Therefore, under the counts to which defendant

HANDLEY is pleading guilty, the total maximum sentence is life imprisonment." (*Id.* ¶ 7(d).)

If anything, the plea offer seems to suggest that Petitioner would receive a *minimum* of 15 years:

it estimates Petitioner's Sentencing Guidelines Range for Count Two to be 121 to 151 months,

but notes that the statutory maximum was ten years, and thus "HANDLEY's effective guideline sentence for Count Two is 120 months' imprisonment. In addition, [Count One of the plea offer] carries a mandatory consecutive minimum sentence of 5 years' imprisonment." (*Id.* ¶ 9(d).) The Guidelines Range for Count One was 5 years, and thus the total Guidelines-recommended sentence under the plea offer was 15 years. (*Id.* ¶ 9(b).)

Despite his mischaracterization of the maximum sentence he could receive under the proposed plea agreement, Petitioner contends that he would have accepted this "sweetheart of a deal" if Brindley had not advised him to reject the plea offer because accepting it would allow the government to convict him of crimes that were not included by the indictment, of which there was no evidence, and would thus allow the government to sentence him beyond the maximum sentence he would receive if convicted at trial. (R. 8, Mot. Reconsider at 5-6.) Petitioner contends that Brindley advised him that the statutory maximum sentence he faced if convicted at trial was ten years of imprisonment and his likely Guidelines range was 70 to 87 months. (*Id.* at 3.)

On December 10, 2008, after a three-month trial, a jury found Petitioner guilty of racketeering conspiracy pursuant to 18 U.S.C. § 1962(d), which carries a statutory maximum sentence of twenty years. The district court agreed with the calculations in the pre-sentencing report determining that Petitioner's total offense level was 43, which results in a Guidelines-recommended sentence of life, in excess of the statutory maximum. On October 15, 2009, Petitioner was sentenced to a 20-year term of imprisonment and three years of supervised release.

Petitioner filed his notice of appeal, challenging both his conviction and his sentence, on October 26, 2009. The Seventh Circuit affirmed both on August 18, 2011.[1] *Morales*, 655 F.3d at 644-47. The Seventh Circuit held, as relevant to Petitioner, that (1) the district court's failure to state its reasons on the record for granting the government's motion for an anonymous jury empanelment was harmless error; (2) the district court did not abuse its discretion in declining to further sever the proceedings; (3) the district court did not abuse its discretion when it denied the defendants' motion for a hearing based on alleged juror misconduct; and (4) the district court did not err in sentencing Petitioner.

Petitioner timely filed his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in this Court on June 25, 2012, claiming that he received ineffective assistance of counsel. (R. 1, Pet'n.) This Court denied his habeas petition on July 13, 2012. (R. 5, Min. Entry.) Petitioner now moves the Court to reconsider its denial of his petition pursuant to Federal Rule of Civil Procedure 59(e), (R. 8, Mot. Reconsider), and to hold an evidentiary hearing pursuant to 28 U.S.C. § 2255(b), (R. 7, Mot. Hearing).

## LEGAL STANDARDS

Rule 59(e) "enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Section 2255 allows an incarcerated prisoner to request his sentence be vacated on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[R]elief

---

[1] The Seventh Circuit also affirmed the convictions and sentences of Petitioner's codefendants.

under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted)). An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## ANALYSIS

Petitioner argues that the Court erred by denying his ineffective assistance of counsel claim without making findings or applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (R. 8, Mot. Reconsider at 4.) Petitioner contends that the Court's reliance on the pretrial and trial record fails to apply the standards of review set forth in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012). (*Id.* at 5.) Petitioner argues that he received ineffective assistance of counsel because Brindley's "unreasonable affirmative advi[ce]" during plea negotiations resulted in prejudice to Petitioner. (*Id.*) Petitioner contends that Brindley's erroneous advice as to the statutory maximum sentence Petitioner faced under the indictment, and his likely actual sentence, was the only reason he rejected the plea agreement the government offered. (*Id.* at 5-7.) Despite Petitioner's mischaracterization of the plea offer, his allegation that Brindley advised him that ten years was the maximum sentence he could receive at trial requires further consideration.

The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel, "a right that extends to the plea-bargaining process." *Lafler*, 132 S. Ct. at 1384. To establish ineffective assistance of counsel, Petitioner must show that his counsel was deficient and that this deficiency prejudiced him. *Strickland*, 466 U.S. at 687; *see*

5

*also Frye*, 132 S. Ct. at 1405 ("*Hill* [*v. Lockhart*, 474 U.S. 52, 57 (1985),] established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*."). Petitioner must establish both elements to succeed on his ineffective assistance claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

## I.     Whether counsel's performance was deficient

To establish the deficient performance prong of the *Strickland* analysis, Petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This is a high bar, and the Court will not "question the objectively reasonable strategic decisions of counsel." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 690); *see also Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) ("The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" (quoting *Strickland*, 466 U.S. at 687)). In the context of advice concerning a plea agreement, "[a] reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis." *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007). Although "a mistaken prediction is not enough in itself to show deficient performance, . . . [a] gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996). A petitioner "can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Id.*; *see also Julian*, 495 F.3d at 496.

6

In *Missouri v. Frye*, the Supreme Court acknowledged the difficulty in determining whether a defense counsel's performance in the plea negotiation process is sufficient. 132 S. Ct. at 1408. Although there is no exhaustive list of defense counsel's obligations, "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable." *Strickland*, 466 U.S. at 688. The ABA standards state that "[d]efense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed." ABA Standards for Criminal Justice Pleas of Guilty, Standard 14-3.2(b) (3d Ed. 1999). "[T]he Standard contemplates that any plea offer will be assessed not only based on the maximum possible punishment in the event of a guilty plea, but also by comparison to the probable sentence the judge would impose after trial." ABA Standards for Criminal Justice Pleas of Guilty, Commentary on Standard 14-3.2(b), p. 122. "Defense counsel cannot predict many of these matters with certainty, but the defendant is nonetheless entitled to counsel's best professional judgment," and "counsel must avoid overconfident assurances to clients." *Id.* While a miscalculation of the applicable Sentencing Guidelines range is not typically deficient performance, a failure to effectively analyze applicable law and its effect on a defendant's potential sentence does constitute deficient performance. *See, e.g.*, *Welch v. United States*, 604 F.3d 408, 412 (7th Cir. 2010) (defense counsel's determination that defendant did not qualify for the Armed Career Criminal Act sentencing enhancement resulted in a miscalculation of a statutory minimum sentence and was therefore deficient performance); *Julian*, 495 F.3d at 495, 97 (defense counsel's performance was constitutionally ineffective when he failed to analyze relevant caselaw and when his advice regarding the maximum sentence the defendant faced "was clearly wrong and therefore objectively unreasonable"); *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003) ("Where

erroneous advice is provided regarding the sentence likely to be served if the defendant chooses to proceed to trial, and that erroneous advice stems from the failure to review the statute or caselaw that the attorney knew to be relevant, the attorney has failed to engage in the type of good-faith analysis of the relevant facts and applicable legal principles, and therefore the deficient performance prong is met.").

Here, Brindley's alleged erroneous advice appears to have been based on a failure to understand the statutory law implicated by the indictment rather than on a miscalculation of the Sentencing Guidelines. Petitioner contends that Brindley advised him that he faced a statutory maximum of 120 months under the conspiracy charged in the indictment. (R. 8, Mot. Reconsider at 7.) The second superseding indictment, however, charged Petitioner with racketeering conspiracy in violation of 18 U.S.C. § 1962(d). The statutory maximum penalty for a violation of section 1962 is 20 years (unless "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment," in which case the maximum sentence is life). 18 U.S.C. § 1963(a). Although the Court is strongly deferential to lawyers' strategic decisions, *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011), defense counsel are required to research the sentencing law that applies to their client and advise appropriately, *see Julian*, 495 F.3d at 495. Accordingly, Brindley's failure to accurately advise Petitioner as to the maximum sentence he faced if convicted at trial, if true, may provide a basis for Petitioner's ineffective assistance of counsel claim. Petitioner's allegations in his motion and his supporting affidavit are not sufficient to establish that Brindley's performance was constitutionally defective, but neither can this Court say that "the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255. An evidentiary hearing may therefore be necessary to determine whether Petitioner has met the deficient performance prong

8

of his ineffective assistance claim. In order for Petitioner's motion to go forward, however, he must also establish that he was prejudiced. *See Gant*, 627 F.3d at 682.

## II. Whether Petitioner was prejudiced

Petitioner argues that Brindley's alleged failure to correctly advise him during plea negotiations deprived him "of his right to intelligently consider the offered plea deal" and induced him to decline the favorable plea offer and proceed to trial, "where he was convicted and sentenced to a much more severe term [of] imprisonment than he would have received under the plea offer." (R. 8, Mot. Reconsider at 7.)

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 132 S. Ct. at 1409. "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.* Finally, the defendant must demonstrate that acceptance of the plea offer would have resulted in a less severe sentence than was in fact imposed. *Lafler*, 132 S. Ct. at 1385.

First, Petitioner attests that if his counsel had accurately advised him of the statutory maximum he faced under the indictment, he would have accepted the plea offer rather than gone to trial. (R. 9, Pet'r's Aff. ¶ 12.) "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). The type of legally erroneous advice Petitioner alleges he received from Brindley is "precisely the type of information that is likely to impact a plea decision" and that the Seventh Circuit has found to be prejudicial. *Moore*,

9

348 F.3d at 242-43 (finding prejudice where defendant was eligible for 12-and-a-half to 15 years of incarceration if he lost at trial but accepted a plea bargain agreeing to serve 10 years after defense counsel told him he would receive 22 to 27 years if he lost at trial); *see also Julian*, 495 F.3d at 498-99 (finding prejudice where defendant was eligible for a 60-year sentence and received a 40-year sentence after he rejected a 23-year plea agreement and went to trial based on counsel's advice that the maximum sentence he could receive was 30 years of incarceration); *United States v. Herrera*, 412 F.3d 577, 579 (5th Cir. 2005) (reversing the district court's denial of the habeas petition and remanding for an evidentiary hearing when counsel advised petitioner, who faced a sentencing range of 78 to 97 months at trial, that he should reject a plea offer that would subject him to a 48-month maximum sentence because he only faced a 51-month maximum sentence at trial); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (defense counsel provided ineffective assistance when the defendant rejected a plea offer based on counsel's "gross[ ] underestimat[ion]" of his sentencing exposure: defense counsel advised that defendant faced a maximum of 120 months when his Guidelines range was actually 210 to 262 months). Although a "mere allegation by [Petitioner] that he would have insisted on going to trial is insufficient to establish prejudice," such a statement can support a finding of prejudice in combination with objective evidence such as a history of the plea discussions and testimonial evidence. *Julian*, 495 F.3d at 499 (quoting *United States v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003)).

Petitioner "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Frye*, 132 S. Ct. at 1409. Petitioner does not attach to his motion any evidence that the plea would have been accepted, but there is also nothing to indicate that the plea would not have been accepted. In

fact, one of Petitioner's co-defendants accepted a plea offer, and the plea agreement was accepted by the trial court. Finally, the attached plea offer indicates a Guidelines-recommended sentence of 15 years, which is significantly less severe than the 20-year sentence Petitioner received. The Seventh Circuit requires a petitioner to present objective evidence that he was prejudiced. *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citing *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). Frequently, evidentiary hearings are required in order to give petitioners an opportunity to provide such objective evidence. *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008) ("Ineffective assistance claims often require an evidentiary hearing because they frequently allege facts that the record does not fully disclose."). The Court finds that in this case, an evidentiary hearing may be necessary to determine the factual basis of the prejudice prong of the *Strickland* test.

The Court misinterpreted the specific nature of Petitioner's claim in his previous motion. Upon reconsideration, the Court finds that Petitioner has alleged facts that, if true, may entitle him to relief. The Court now concludes that an evidentiary hearing may be required to resolve both the performance and the prejudice prongs of Petitioner's ineffective assistance claim. The government will be given 30 days from the date of this decision to respond in writing to Petitioner's allegations. This response may include an affidavit from Mr. Brindley and should address the issue of the necessity of a full evidentiary hearing.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to reconsider (R. 8) is GRANTED.

Petitioner's motion for an evidentiary hearing (R. 7) will remain under advisement.

ENTERED: 

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 27, 2014**